**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: AVOCADO OIL | ) | |
| MARKETING | ) | MDL No. _____ |
| LITIGATION | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML"), Plaintiffs Clair Awad, Rajat Dawar, Maggie Frost, Matthew Hawkins, Ralph Milan, Kevin Smith, Lachae Vickers, and Cara Zajac (collectively, "Movants") respectfully submit this brief in support of their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.

Movants seek transfer and assignment of all pending actions[1] against companies that have falsely advertised that their avocado oil products ("Products") only contain avocado oil, despite being cut with inferior non-avocado oils, as well as any subsequently-filed actions involving similar facts or claims (*i.e.* "tag-along actions"), to the United States District Court for the Northern District of Illinois, as it is (1) centrally located in the country, (2) the location of at least one defendant's headquarters and principal place of business, and (3) home to two major airports. In the alternative, Movants respectfully request transfer and assignment of the Actions and any tag-along actions to the District of Massachusetts, as that District (1) is also the location of at least one defendant's headquarters and principal place of business, (2) is also home to major travel and transit hubs, and (3) has a wealth of relatively new jurists who would surely benefit from overseeing a multidistrict litigation.

---

[1] All pending actions are listed in the Schedule of Actions ("Actions" or "Avocado Oil Actions").

## I.       BACKGROUND

The first Avocado Oil Action, *Matthew Hawkins v. Walmart, Inc.*, No. 1:24-cv-00374, was filed in March 2024 in the United States District Court for the Eastern District of California.  There, as in every other Avocado Oil Action, the plaintiff alleges that what is labeled as pure avocado oil product is adulterated with inferior oils. Then, following an August 27, 2024 expose in The Washington Post titled "*Why your avocado oil may be fake and contain other cheap oils*,"[2] a flood of additional Avocado Oil Actions were filed bearing largely overlapping allegations, beginning with *Maggie Frost v. Aldi*, 1:24-cv-07095 in the Southern District of New York on September 18, 2024. Over the following weeks, civil actions were filed in various United States District Courts sitting in jurisdictions across the country naming Sam's Club[3], Sprouts Farmers Market[4], Sovena USA, Inc.[5], Target Corporation[6], The Stop & Shop Holdings, Inc.[7], Trader Joes Company[8], and Walmart, Inc.[9] as defendants in putative class actions related to the false advertising of their purportedly pure avocado oil products, which are  adulterated with inferior oils. Most[10] of these actions were filed by Movants. In each of the recently filed Actions, the allegations are substantially similar: a named plaintiff seeks to represent a class of similarly situated purchasers of the subject Products who allege that they have suffered an economic injury based on the fact of that they purchased purportedly pure avocado oil products that are adulterated with inferior oils.

---

[2] Anahad O'Connor and Aaron Steckleberg, *Why your avocado oil may be fake and contain other cheap oils*, Washington Post (Aug. 27, 2024), www.washingtonpost.com/wellness/2024/08/27/avocado-oil-adulteration-tests/ (last visited Oct. 22, 2024).
[3] *Rajat Dawar v. Sam's West, Inc., et. al.*, No. 1:24-cv-09106 (N.D. Ill. Sept. 27, 2024).
[4] *Milan v. SFM LLC*, No. 2:24-cv-02642 (D. Ariz. Sep. 30, 2024).
[5] *Ebony Morrison v. Sovena USA, Inc.*, No. 2:24-cv-08144 (C.D. Cal. Sept. 23, 2024).
[6] *Brittany Valdovinos v. Target Corporation*, No. 2:24-cv-08572 (C.D. Cal. Oct. 4, 2024).
[7] *Cara Zajac v. The Stop & Shop Holdings, Inc.*, No. 1:24-cv-12512 (D. Mass. Oct. 1, 2024).
[8] *Kevin Smith, et. al. v. Trader Joes Company*, No. 3:24-cv-06834 (N.D. Cal. Sept. 27, 2024).
[9] *Eddie Golikov v. Walmart, Inc.*, No. 2:24-cv-08211 (C.D. Cal. Sept. 24, 2024).
[10] Movants filed all present Actions except for *Golikov v. Walmart, Inc.*, *Morrison v. Sovena USA, Inc.*, and *Valdovinos v. Target Corp.* However, Movants named Walmart as a defendant in *Hawkins v. Walmart, Inc.*, and *Dawar v. Sam's West, Inc., et. al.* relates to the same exact product as in *Morrison v. Sovena USA, Inc.*

Avocado oil is an increasingly-popular cooking oil choice for consumers both because it is a near-flavorless, high-smoke-point cooking oil and because of the reported health benefits of using avocado oil in place of other cooking oils.[11] The global demand for avocado oil continues to increase year-over-year, and avocado oil is projected to become a billion-dollar industry within the decade.[12] Recent reporting in The Washington Post[13] regarding avocado oil adulteration and testing, including third-party testing commissioned by Movants, speaks to both the prominence of avocado oil in the marketplace and the likelihood of further tag-along actions that have yet to be filed, potentially naming additional defendants.

Given the infancy of these Actions, none of the plaintiffs have had the opportunity to conduct discovery or take any other actions that would move the matters toward trial such that transfer would be unduly prejudicial or inefficient in any respect. Further, no defendant has answered any of the complaints, so these Actions are at an ideal stage to consolidate or coordinate for pretrial proceedings. Lastly, the likelihood of additional tag-along complaints premised on similar facts favors coordination.

## II.     LEGAL STANDARD

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  In relevant part, Section 1407(a) provides as follows:

> When civil actions involving one or more common questions of fact
> are pending in different districts, such actions may be transferred to

---

[11] Marcos Flores, et. al., *Avocado Oil: Characteristics, Properties, and Applications*, 24 Molecules 2172 (2019).
[12] Fortune Business Insights, *Avocado Oil Market Size, Share & Industry Analysis, By Type (Extra Virgin Oil, Virgin Oil, Pure/Refined Oil, and Blend), Application (Food and Beverages, Pharmaceuticals and Medicinal Formulations, Personal Care and Cosmetics, and Others), and Regional Forecast, 2024-2032* (Sep. 30, 2024), https://www.fortunebusinessinsights.com/industry-reports/avocado-oil-market-101938 (last visited Oct. 22, 2024)
[13] O'Connor and Steckleberg, *supra*.

any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id.*; *see also In re Nifedipine Antitrust Litig.*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

## III.   ARGUMENT

### A.   The Actions are Appropriate for Transfer and Coordination Pursuant to 28 U.S.C. § 1407(a)

The Avocado Oil Actions are ripe for consolidation and transfer under Section 1407 because they all share "one or more common questions of fact" and are presently pending in different districts. 28 U.S.C. § 1407(a). Among other questions, the Actions each involve questions as to:

1. Whether the defendant in each Action misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of purportedly pure avocado oil products;

2. Whether the defendant's use of any claim or representation related to the oil constituted false or deceptive advertising;

3. Whether the defendant engaged in unfair, unlawful, and/or fraudulent business practices;

4. Whether the conduct was intentional and knowing;

5. Whether the putative classes are entitled to damages and/or equitable relief, and in what amounts;

6. Whether the putative classes are entitled to injunctive relief;

7. Whether the putative classes are entitled to punitive damages, and in what amounts;

4

8.   Whether Plaintiffs are entitled to an award of reasonable attorneys' fees and costs, plus interest.

While the Actions do relate to different products sold by different defendants, given the nature of food manufacturing, wholesaling, and retailing, it is likely that at least some of the products involved in the present Actions are manufactured, bottled, wholesaled, or distributed by the same entities. Further, each complaint is based on substantially similar allegations that the product in each of the Actions is not, in fact, solely avocado oil, as represented on the front and back label. The Actions each allege similar legal theories and seek certification of similar classes and subclasses. The JPML has consistently consolidated cases such as this because, even though they involve different products, they inherently involve common questions of fact. *See, e.g., In re 100% Grated Parmesan Cheese Mktg., Sales Pracs. Litig.*, 201 F. Supp. 3d 1375 (J.P.M.L. 2016); *In re: Johnson & Johnson Sunscreen Mktg., Sales Pracs. and Prods. Liab. Litig.*, 568 F. Supp. 3d 1412, 1413-14 (J.P.M.L. 2021); *In re: Abbott Infant Formula Prods. Liab. Litig.*, MDL No. 3037, 2022 WL 3134144, at *1-2 (Aug. 5, 2022); *In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1379 (J.P.M.L 2015).

Further, Section 1407 does not require "complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004). As noted above, the Actions each share a common core of factual allegations; namely, the true nature of the product that is sold and labeled as solely avocado oil, whether such labeling was deceptive and fraudulent, and whether plaintiffs are entitled to damages. Indeed, this action is markedly similar to *In re 100% Grated Parmesan Cheese*, 201 F. Supp. 3d at 1376, where the JPML transferred and consolidated actions in the Northern District of Illinois stemming from a news article reporting that independent laboratory testing found significant amounts of

preservatives and anti-caking agents in grated parmesan cheese products that were labeled as "100%" grated parmesan cheese.  The JPML order concerned different products made by different defendants.  Here, the actions concern substantially identical avocado oil products, all of which are labeled as being composed of solely avocado oil, and which are alleged to contain inferior oils other than avocado oil.

In addition, though the cases arise under varying consumer protection laws by virtue of pending in different districts, the applicable laws here are substantively identical. And where these laws differ, "the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core." *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008).

### B.      Transfer, Centralization, and Coordination Will Further the Convenience of the Parties and Serve Judicial Economy

Resolution of these common issues in a single forum would further the convenience of all parties and witnesses. See 28 U.S.C. § 1407(a). As discussed in Section III.A, *supra*, it is likely that at least some of the products involved in the Actions are manufactured, bottled, wholesaled, or distributed by the same entities. Accordingly, and because all Actions involve similar allegations and factual questions, plaintiffs in the Actions will likely require depositions of the same witnesses and discovery of the same documents. Multidistrict litigation thus avoids "duplicative discovery; prevent[s] inconsistent pretrial rulings; and conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).

Absent transfer, the federal court system will be forced to administer — and Defendants will be compelled to defend — these related Actions and any tag-along actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial

decision-making and local procedural requirements. Moreover, each plaintiff will be required to monitor and possibly participate in each of the other similar actions for various legal and factual issues that will be relevant to their respective Actions. Many of the same pretrial disputes are likely to arise in each action. Likewise, due to the similar causes of action in each complaint, Defendants will likely assert the same defenses, as well as file motions to dismiss and for summary judgment on the same claims based on the same arguments in each action.

None of the pending cases has progressed to the point where efficiencies will be forfeited through transfer to an MDL proceeding. The JPML has recognized that consolidating litigation in one court benefits both plaintiffs and defendants. For example, pretrial transfer would reduce discovery delays and costs for plaintiffs, and permit plaintiffs' counsel to coordinate their efforts and share the pretrial workload. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("[I]t is most logical to assume that prudent counsel will combine their forces and apportion the[ir] workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned."); *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984) (same).

Moreover, a number of Defendants in these Actions are conglomerates or operate stores in multiple regions, creating the possibility of tag-along actions that may be filed anywhere in the country, which would necessitate cumbersome and expensive response on the part of Defendants. Transfer, centralization, and coordination would create efficiencies since fact and expert depositions will be coordinated, document production will be centralized, and travel for Defendants' current and former employees will be minimized, since they will only have to appear in one location rather than multiple districts around the country.

7

Transfer also will reduce the burden on the parties by allowing more efficient and centralized divisions of workload among the attorneys already involved in this litigation, as well as those who join later. Plaintiffs themselves will reap efficiencies from being able to divide up the management and conduct of the litigation as part of a unified MDL process through a plaintiffs' steering committee or similar mechanism, instead of each plaintiffs' firm separately litigating its own cases on distinct and parallel tracks. *See, e.g., In re PPA*, 173 F. Supp. 2d at 1379; *In re Tylenol Mktg., Sales Pracs. and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) ("Centralization will . . . conserve the resources of the parties, their counsel, and the judiciary.").

Finally, it is probable that this litigation will continue to grow. It has only been seven weeks since the initial *Washington Post* article alerted consumers to Defendants' unlawful practices. So far, at least nine federal lawsuits have been filed, and there are potentially millions of other consumers who could file suit. The likelihood that this litigation will continue to grow further weighs in favor of centralization. *See In re Schnuck Mkts., Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (granting § 1407 motion where the estimated number of affected customers across five states indicated that additional tag-along actions could be filed).

## C.   The JPML Should Transfer the Related Actions to the Northern District of Illinois Before Judge Jeremy C. Daniel

The JPML has recognized that a defendant's maintenance of corporate headquarters in a District is one reason to select that district as a transferee forum, because when "defendants maintain headquarters within the district, [that] implies that relevant documents and witnesses will likely be found there." *In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004). Defendant in the *Frost* Action, Aldi, Inc., is headquartered just outside Chicago, in Batavia, Illinois, and thus is within the Northern District of Illinois. Moreover, nearly all of the defendants

8

to the present Actions conduct substantial business in the Northern District of Illinois. Indeed, only The Stop & Shop Holdings, Inc. does *not* operate a store within the District.

Further, the Northern District of Illinois is both a centrally and conveniently located forum for all parties. Since the Northern District of Illinois is in the Great Lakes region of the country, no party will be required to travel more than four hours by plane to fulfill its duties, whereas any forum on either the east or west coast is likely to require at least some parties to take transcontinental flights. For the convenience of parties that will need to travel, the Northern District of Illinois is home to two major airports: Chicago-O'Hare (ORD) and Chicago-Midway (MDW). While parties like Trader Joes Company may be required to travel from their California headquarters to the District, ample flights are available into either of the two major airports or any of the dozen regional airports within the District, not to mention those within a short drive, like Milwaukee's General Mitchell Airport (MKE). The Northern District is also home to Chicago, one of the largest cities in the country, and does not lack for the resources and services that the parties may require.

Judge Jeremy C. Daniel is the judge assigned to the *Dawar* Action currently venued in the Northern District of Illinois. Plaintiffs respectfully request that the Actions be consolidated and transferred to Judge Daniel.

Judge Daniel is relatively new to the Federal bench, having received his commission in June 2023. As such, he has not yet presided over any multidistrict litigation. To be sure, Judge Daniel is not inexperienced: a decade ago, he served as a clerk for now-Chief Judge of the Northern District of Illinois, the Honorable Virginia Mary Kendall. Following his clerkship, Judge Daniel served as an Assistant United States Attorney in the Northern District, where he served until ascending to the bench. At this juncture in his judicial career, presiding over this MDL would

provide Judge Daniel with a wealth of experience that will surely serve him, the judiciary, and the parties that come before him well in the future.

**D.     In the Alternative, the Avocado Oil Actions Should be Consolidated Before Judge Leo T. Sorokin or Another Judge of the United States District Court for the District of Massachusetts**

As an alternative to centralization and transfer to the Northern District of Illinois before Judge Jeremy C. Daniel, the JPML could consolidate these Actions before Judge Leo T. Sorokin of the District of Massachusetts or another judge of the same district. Judge Sorokin is an experienced jurist and has served on the Federal bench since 2005, first as a Magistrate Judge, and since 2014, as a District Judge. While Judge Sorokin has not presided over an MDL since becoming a District Judge, he served as a Magistrate Judge for multiple MDLs during his tenure, including *In re Neurontin Mktg., Sales Pracs., and Prod. Liab. Litig.*, MDL No. 1629, which he successfully helped shepherd toward resolution. He also currently is assigned to preside over the Action against Stop & Shop, *Zajac v. The Stop & Shop Holdings, Inc.*, No. 1:24-cv-12512 (D. Mass. Oct. 1, 2024). As such, Judge Sorokin would be a natural choice to receive the transferred and consolidated Actions.

The District of Massachusetts would also be a wise choice of forum for consolidation. Like the Northern District of Illinois, the District of Massachusetts is home to the headquarters of one of the defendants. The Stop & Shop Holdings, Inc. is headquartered in Quincy, Massachusetts. Another defendant, Trader Joes Company, maintains a corporate office in Boston. Further, each of the defendants in these related Actions conducts significant business and operates retail markets within the District. And like the Northern District of Illinois, the District of Massachusetts is home to a major city, Boston, and its major airport, Boston Logan (BOS). The District of Massachusetts is also home to a number of regional airports, and there are others still within a short drive, such

10

as Manchester-Boston Regional Airport (MHT) in Manchester, New Hampshire and Albany International Airport (ALB) in Albany, New York.

Though there are five present MDLs pending in the District of Massachusetts, the majority of the District Judges do not presently have an MDL assigned to them. And like Judge Daniel of the Northern District of Illinois, many of these judges who have been relatively recently named to the Federal bench would surely benefit from the experience of managing an MDL. Accordingly, the District of Massachusetts should have ample resources, judicial and otherwise, at its disposal to manage consolidation of the present Actions.

## IV.    CONCLUSION

For the foregoing reasons, Movants respectfully request that the JPML centralize and consolidate these related Actions in multidistrict litigation, pursuant to 28 U.S.C. § 1407, and transfer the Actions to the United States District Court for the Northern District of Illinois and Judge Jeremy C. Daniel, or in the alternative, to the United States District Court for the District of Massachusetts and Judge Leo T. Sorokin, or another judge of that district.


Dated: October 23, 2024            **FARUQI & FARUQI, LLP**

                                By:     */s/ Timothy J. Peter*
                                Timothy J. Peter (SBN 306965)
                                1617 JFK Blvd., Suite 1550
                                Philadelphia, PA 19103
                                Telephone: (215) 277-5770
                                Facsimile: (215) 277-5771
                                tpeter@faruqilaw.com

                                Lisa Omoto (SBN 303830)
                                **FARUQI & FARUQI, LLP**
                                1901 Avenue of the Stars, Suite 1060
                                Los Angeles, CA 90067
                                Telephone: (424) 256-2884
                                Facsimile: (424) 256-2885

lomoto@faruqilaw.com

Neal J. Deckant (SBN 322946)
Brittany S. Scott (SBN 327132)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ndeckant@bursor.com
bscott@bursor.com

Aubry Wand (SBN 281207)
**THE WAND LAW FIRM, P.C.**
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
awand@wandlawfirm.com

Joel Dashiell Smith (SBN 244902)
**Smith Krivoshey, PC**
867 Boylston Street
5th Floor #1520
Boston, MA 02116
Telephone: (415) 202-6109
joel@skclassactions.com

Yeremey O Krivoshey (SBN 295032)
**Smith Krivoshey PC**
166 Geary St., Suite 1500-1507
San Francisco, CA 94108
Telephone: (415) 839-7077
yeremey@skclassactions.com

*Attorneys for Plaintiffs Cara Zajac, Lachae
Vickers, Ralph Milan, Rajat Dawar, Kevin
Smith, Clair Awad, Maggie Frost, and
Matthew Hawkins*